So the remaining case on our docket is the Institute for Free Speech v. Fred Jarrett. Counsel, please come forward. In the name of the Father, and of the Son, and of the Holy Spirit. Amen. Good morning. May it please the Court. Del Cold for the Institute for Free Speech. If possible, I would like to reserve five minutes for rebuttal. In many ways, this is a disclosure case in search of a campaign. But Washington State does not have a government interest in requiring IFS to register and report its work on behalf of defendants such as Tim Lyman. For nearly 60 years, the Supreme Court has recognized that pro bono lawyers have a First Amendment right to associate and speak for the goal of litigating against the government. In Button, the state of Virginia sought to use lawyer-client solicitation rules to block the NAACP from recruiting plaintiffs to challenge racial segregation. Washington State is walking in Virginia's footsteps by using its campaign finance apparatus to dissuade IFS from representing Tim Lyman for free in the appeal of a civil enforcement case. They have done so by leveraging their own aggressive enforcement tactics against Lyman, which create a plausible threat of FCPA enforcement against IFS. Counsel, I read your briefs, and I'll tell you where my problem here is. I'm looking at, for example, at ER 85, the declaratory order number 18, where in paragraph 4 on that page, the entity says, These are the issues you've raised. You want to represent Mr. Lyman on appeal. No problem. Such services would not be reportable as an in-kind contribution and would not trigger any registration or reporting requirement. So what claim do you have left that you have standing to make before us when you said, We want to make sure we can represent him on appeal, and the entity said, Yes, you can, without having to report? What am I missing here? They didn't, Your Honor. Okay. The issue is the aggressive, leading up to this, the issue is the aggressive enforcement tactics. The state of Washington asked the state court to designate Tim Lyman a human PAC, basically a one-man ongoing political committee. Yeah, but he's your client. Not my client, not right now, but he could be. Yes, yeah, he could be, and that's the issue because if he is an ongoing one-man political committee, we are a nonprofit, 501C3. If we provide pro bono legal services, that is an in-kind contribution to a political committee. Judge Bennett just read your language that says you're not. It doesn't say that because the order says specifically What would it need to say? What would you require it to say? So there would be two alternatives, one we proposed and one the state belatedly worked into its briefing. The one we proposed is a limiting construction on the definition of contribution or expenditure to say that it does not apply to pro bono legal services provided in a defense posture such as we have here. The other alternative would have been, and this was the state's own suggestion, although they never made it below, and this is very important, is to simply say that any representation of Tim Lyman in this appeal would be a representation of him as a person, not a political committee. That is specifically the issue the PDC avoided reaching. It is the main issue we asked them to reach, and they avoided reaching it. Did you seek reconsideration? No, but we're not required to exhaust administrative remedies. It sounds like that's the only thing. I was just curious, some sort of direct review of the commission's declaratory order. You decided to come straight here. Yes, and we didn't even need to seek this order. We tried to work with the state. We reached out to them. I reached out to opposing counsel, and the email's in the record. He said he wouldn't give me an answer. He said seek guidance from the PDC. What's the current status of this appeal? I don't mean our appeal. What's the current status of that appeal that was the subject of the declaratory order? The best I know, it's pending in Division 2, the Washington State Court of Appeals. It's set for oral argument October 20th. So Mr. Iman has a different lawyer? Mr. Iman continues to be represented by his counsel below, Richard Sanders. But Mr. Sanders and his team are billing Mr. Iman's bankruptcy estate. So his debts, which are already in excess of $5 million to the state of Washington, are continuing to go up. But he's an individual appellant. Well, he's an individual appellant who the state of Washington has also designated an ongoing political committee. And the final findings, including the judgment by the state court at the request of the state of Washington, was that Tim Iman, as he's sitting here today in court, is an ongoing political committee. So when we represent him, we're not just representing Tim Iman legally. We're representing an ongoing political committee. The PDC even recognized that. They said, and I'm quoting from ER 86, the superior court has designated Mr. Iman as a continuing political committee. They said it themselves. They acknowledge it. Whether pro bono legal services, what we want to do, provided prospectively to Mr. Iman and his role as a continuing political committee, must be reported is a question reserved for the ongoing jurisdiction of the superior court. They refuse to reach that issue, even though they enforce this law. Although you only asked them to say, as I read your petition, let us know if representing him on appeal triggers these reporting requirements. You said you wanted to represent him on appeal. And, I mean, I understand your argument, but I still don't see how they didn't answer your question. Well, because by representing him on appeal, we're representing a political committee, and that could make us an incidental committee, subject to reporting under Washington state law. And so they've clearly said they wouldn't reach that issue. So they dodged that question. And in the lead-up, as well as during the argument at the hearing, I repeatedly said this is the one issue, this is the main issue, that we need you to reach, is to tell us whether we become an incidental committee or we become any kind of entity that's subject to reporting by representing someone who's not just a person, but is also a political committee. And they explicitly failed to reach that issue. And on the record, the PDC's general counsel during the hearing said, you know, you might become an incidental committee. I'm paraphrasing. I quoted the exact language in the brief. He said, it's possible. You might become an incidental committee. So we can't ignore that. That is an implicit threat. When the chief legal officer, a legal advisor for the primary enforcement agency says, you might become an incidental committee that has to report, that's an implicit threat. The institute didn't ask the committee whether it would become an incidental committee in the petition, did they? We asked whether we would have to report as any kind of an entity, because we didn't know. So we asked. You didn't ask that specifically? Specifically, no. But we didn't have to. We don't have to exhaust state administrative remedies. The state offered to us that we might become an incidental committee through the statements of the PDC's general counsel at the hearing. So the act's registration, reporting, and disclosure requirements only seem to appear to trigger if the institute is itself a political committee or an incidental committee. Correct. And so in your view, is the institute such a committee? We're not a political committee. I don't think that. The state certainly hasn't told us that. There is a risk we could be deemed an incidental committee. We do because we would be supporting, by taking on this representation, arguably we would be supporting a political committee with pro bono legal services. So that's an in-kind contribution, and that would be valued at the value of our legal services. The record clearly reflects that those would be at least $25,000 a year that would meet that threshold. In addition, we receive donations that are reported on our Schedule B, our Form 550, our Schedule Bs, which are posted on our website going back nine years. If that's an issue, that information is clearly available. It's also available from the state of Oregon's charitable donations website. So we have donations that meet the donation threshold of a single source of $10,000 or more. That would make us potentially a qualifying entity. So the Commission said the Institute did not provide it with evidence that could resolve the question of whether the Institute is an incidental committee. So I'm just trying to figure out why. That's why it didn't answer, you know, the question that you're posing because it seems like it didn't need to have what it needed to answer the question. Well, they didn't ask us, Your Honor, and I on multiple occasions said if there's more information we need to provide you, we're happy to provide that information both during the hearing and in discussions leading up to the hearing with the PDC's General Counsel. In addition, the WAC specifically authorizes the Executive Director to conduct an investigation if he chooses to get additional information. A five-minute web search would have given them the information they wanted to know. And let's be honest here. The state of Washington knows that we get more than a $10,000 donation from a single source. They know that. And so you're saying that the Act injured the Institute in what way then? Because I'm trying to figure it out. Because of the plausible threat of enforcement. Is that speculative though? For a First Amendment claim, it is enough to give us standing to challenge the Act. And the state has adopted a particular position of deliberate tactical ambiguity. They didn't want to be on record saying no because they know it would make them look bad. A plausible threat of enforcement if you were going to provide representation to Mr. Einman for the limited purpose of pursuing an appeal of the court order. Correct. So even though they said that you were – well, I guess I have your argument. I do have to say I just don't understand why with what you raised to the entity, to the commission, the answer in paragraph one of the order didn't answer the question that you asked specific to the appeal. But I understand your answer. I just don't agree that the question wasn't answered. Okay. Well, for our position, Your Honor, is that they clearly did not answer that question because he is an ongoing political committee, which is something they acknowledged in their order. So the order is ambiguous on that issue. In addition, why would the PDC's general counsel say on the record, as we quoted in our briefing, that there was a chance that we would become an incidental committee? If we're an incidental committee and we represent Tim Einman, we will have to report our top ten donors on a Form C-8. I don't think that's disputed. I don't think the state of Washington would dispute that. That is a burden on us because we don't want to disclose our donors and our donors don't want to be disclosed, and that is a recognized interest that IFS has in this case. Well, let's just say, if we conclude, and I don't know where everybody is here, but if we conclude that the Institute's proposed representation of Mr. Einman is insufficient to confer standing, does the case end here? Well, we would ask the court to, you know, essentially grant our summary judgment in our favor and find that the application of the FCPA's definitions would be unconstitutional as applied to pro bono representation of an individual in a defense posture who is defending against the state in an enforcement action. And I think that would be consistent with Button. But if we say there's no standing here, that's the end, isn't it? Yeah, unless we get rehearing on Bonk. Yes. All right, I just wanted to see if you had any other comments or suggestions. Yeah, no, I mean, I think I've made my argument. I have a minute left. I guess I'll save that up. Thanks, Sharon. Thank you. Good morning, Your Honors. May it please the Court. I'm Cindy Alexander. I'm a Deputy Solicitor General appearing on behalf of the defendants today. If the Institute for Free Speech wants to provide pro bono legal representation to Tim Einman in a state court appeal, it may do so without triggering any reporting or registration requirements under Washington law. A binding declaratory order by the Washington Public Disclosure Commission says that. The district court in its decision below says that. The law and its accompanying regulations say that. And the defendants in this case, which include the Attorney General of Washington, have repeatedly said that on the record. IFS's refusal to take yes for an answer here does not give it standing or confer jurisdiction on this court. In light of this consensus among the enforcement officials in this state that IFS's proposed representation would not trigger any disclosure requirements, IFS simply can't show any realistic danger of sustaining a direct injury that would be necessary to establish standing. They're seeking an advisory opinion from this court, and there's simply no justiciable case or controversy that would afford this court jurisdiction under Article III. The Fair Campaign Practices Act, by its terms, doesn't apply to IFS's proposed representation. As the court noted, IFS would only have disclosure requirements if it were a political committee, which no one is arguing that it is, or if it were an incidental committee, which it also is not because it's not making a contribution or expenditure directly to an election campaign or through a political committee. And if that weren't clear enough, the IFS did go to the Public Disclosure Commission to ask for a declaratory order saying that, and they got it, as Judge Bennett recognized. The declaratory order clearly says in Paragraph 1, pro bono legal services provided prospectively by IFS to Mr. Iman individually or to his bankruptcy estate for the limited purpose of pursuing an appeal of the court order in the state court does not require IFS to register or report the identity of its donors, value of its services, its cost of providing services, or any other information. And in Paragraph 4, which Judge Bennett also referenced, the court explains its logic. Such services would not support or oppose any ongoing or prospective election campaign, and therefore it would not be reportable as an in-kind contribution by IFS and would not trigger any registration or reporting requirements. And if that wasn't clear enough, the state has said on the record over and over and over again that there are no reporting requirements that would ensue if the Institute decided to represent Tim Iman in the underlying state enforcement litigation. Now, IFS is just dissatisfied that it didn't get a broader absolution from the state for other representation of Mr. Iman or other parties, and that just simply isn't enough to establish standing in this case. As the court is well aware, IFS has to establish an injury in fact and a realistic danger, realistic danger, of sustaining a direct injury as a result of the state's enforcement. And as we've discussed, claims of self-censorship alone is not sufficient. It has to be reasonable. And the inquiry into injury in fact doesn't turn on the strength of the plaintiff's concerns but the credibility of the threat, and there simply isn't one here. Well, this court has held that pre-enforcement challenges based on the First Amendment face a more relaxed standard of standing than other contexts. So is the Institute's alleged injury that speculative, I guess, given the type of enforcement actions the state has taken in the campaign finance area here? Yes, Your Honor, it's speculative. And yes, it's true that standing requirements are relaxed in a pre-enforcement case like this that may implicate First Amendment rights. But the plaintiff still has to show a realistic danger of sustaining a direct injury. Well, what I think they have to show is a realistic danger or a realistic possibility that they will try to represent Mr. Eyman or others in situations where it would constitute a campaign contribution. And as far as I can tell, I don't have much here that tells me that they've got an ongoing pattern of such representation of people like Mr. Eyman that takes past speculation. I guess on rebuttal he can tell me why it's a realistic possibility that they will try to do things other than what's at issue here. Yes, Your Honor, and the past enforcement efforts in this state have been cases in which there was a close nexus between the donated legal services and an election campaign. So, for example, in the Institute of Justice case, the pro bono services were directly in support of a ballot proposition. And in the Evergreen case, the attorneys participated in lawsuits to compel placement of local initiatives on a ballot. And so in those cases, there was a very close nexus that just isn't here, that it just doesn't exist in this case. And has there ever been a sort of enforcement action in a context similar to the one in which the Institute and Mr. Eyman are? No, Your Honor, not that I'm aware of, not in this state that I'm aware of. So, IFS just simply has not established that they are under any reasonable threat of enforcement. And with regard to their argument that they should be able to challenge our enforcement with regard to other people besides Mr. Eyman, they just simply haven't articulated a concrete plan at all to do that. They have to articulate when, to whom, where, or under what circumstances they would represent them to bring that within the court's jurisdiction. And they simply haven't done that. Your Honor, we do think that if the court were to find standing, it should address the merits of the case and affirm on other grounds. But we would urge the court to affirm the ruling of the district court dismissing for lack of standing. And I do just want to address one thing, and that is contrary to some of the overblown rhetoric in the briefing, there is no nefarious plot among state officials in the state of Washington to deprive Mr. Eyman or anyone else of pro bono legal services. And there's nothing to support that in the record. And, in fact, the record supports the exact opposite. And I would refer the court to Commissioner Downing's remarks where he said it's nice that someone is stepping forward who is eminently qualified to represent Mr. Eyman, and we all applaud and celebrate that fact, and we want to do all we can that can be done to facilitate that. And that's what every state official in this case has done. And so we respectfully ask this court to affirm the ruling of the district court. I'd be happy to answer any additional questions. No. Thank you. Thank you, Your Honors. Judge Fletcher, I see you want to know about a pattern. Well, what I want to know is what takes it out of the realm of speculation that you might seek to represent Mr. Eyman or maybe somebody else in a situation where indeed you might be considered to be making an in-kind contribution because it's very clear in the litigation at issue here there's no such danger. You've been told that. So the question is are there other situations, other representations, that you might want to make that you can plausibly allege here that might give you standing? Well, I would respectfully disagree. So, first of all, all our cases we take on a pro bono basis. That's what we are. We're a pro bono legal service provider. Mr. Eyman has said that if offered he would take on our services. We won't represent him on the current state of the record. Even though you've been told you can do the appeal without any possibility of danger? That is not what we've been told, and that's a fundamental disagreement. What did I just hear being read to you? Okay, well, let me read the other parts of the order that we think creates ambiguity. And, you know, we won't represent Tim Eyman if this court essentially affirms the judgment below and we can't get further review. So ER 85, the previous page of the declaratory order, paragraph 6, legal services provided for the purpose of assisting any continuing political committee registered or required to be registered by Mr. Eyman are not contemplated by this declaratory order and are not intended to be addressed herein. So, in other words, there may be other proceedings. And I'm asking you, what other proceedings are you intending to represent him that are beyond speculation? No, that is not how we interpret that, Your Honor. We're not planning to represent Tim Eyman in anything at this time in anything other than on appeal. And you've been specifically told that with respect to that representation, there's no reporting requirement. We have not been because on ER 86, the order specifically states, the PDC specifically states, the superior court has designated Mr. Eyman as a continuing political committee. Whether pro bono legal services provided prospectively to Mr. Eyman in his role as a continuing political committee must be reported as a question reserved for the ongoing jurisdiction of the superior court. Basically, the PDC is saying we're not reaching the issue of whether representing him as a political committee causes you to become an entity that has to report. They evaded answering that question. They specifically said they evaded answering that question. So that's the issue. Thank you. Mr. Cold and Ms. Alexander, thank you very much for your oral argument presentations here today. The Institute for Free Speech versus Fred Jarrett. The case is now submitted. And that concludes our docket for this morning and for this week. Thank you all very much. We are adjourned.
judges: MURGUIA, FLETCHER, BENNETT